Jerry L. Steering (SBN 122509)
Brenton Whitney Aitken Hands (SBN 308601)
LAW OFFICE OF JERRY STEERING
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerrysteering@yahoo.com

Attorney for Plaintiffs Margaret Alba, individually and as guardian ad litem for minor children A.S., L.S. and S.S. and Daisy Sanchez, individually and successors in interest to Leonard Angelo Sanchez

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET ALBA, individually and as guardian ad litem for her minor children A.S., L.S. and S.S., and DAISY SANCHEZ, individually and successors in interest to LEONARD ANGELO SANCHEZ, and GLORIA ANN ALMAZON, <br><br>    Plaintiffs, <br><br>    vs. <br><br> CITY OF BARSTOW, COUNTY OF SAN BERNARDINO, ALBERT RAMIREZ, JR., JOHN McMAHON, WILLIAM SPILLER II, ANDREW BUESA, ANDREW ESPINOZA, JR., THOMAS LEWIS, MICHAEL CLEARY, ARTURO ALVARADO, BRENDAN MOTLEY, MICHAEL | Case No.: 5:18-CV-02087-JGB (SHK) <br><br> SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW [42 U.S.C. § 1983] CLAIM FOR USE OF UNREASONABLE FORCE UPON PERSON [U.S. CONST. AMEND 4][1], CLAIM FOR UNREASONABLE SEIZURE OF PERSON [U.S. CONST. AMEND 4[2]]; CLAIM FOR UNREASONABLE SEIZURE OF PERSON [U.S. CONST. AMEND 4]; CLAIM FOR INTERFERENCE / DEPRIVATION OF PARENT - CHILD RELATIONSHIP [U.S. CONST. AMEND 14]; UNREASONABLE |

[1] Survivor Claim via Cal. Civ. Proc. Code § 377.30.
[2] Survivor Claim via Cal. Civ. Proc. Code § 377.30.

WARRICK, MICHAEL WALKER, GERAD LAING, JAMES TEBBETS, JOSE BARRIENTOS, JARELL GILMORE, CHRISTOPHER KIRBY, FRANK BENITEZ and DOES 1 through 10, inclusive,

    Defendants.

SEIZURE OF PERSON [U.S. CONST. AMEND  4]; CLAIM FOR UNLAWFUL SEIZURE OF PRIVATE RESIDENCE [U.S. CONST. AMEND 4]; CLAIM FOR UNLAWFUL SEARCH OF PRIVATE RESIDENCE [U.S. CONST. AMEND. 4 and CALIFORNIA STATE LAW CLAIMS FOR WRONGFUL DEATH  [CAL. CIV. PROC. CODE § 377.60]; VIOLATION OF BANE ACT [CAL. CIV. CODE § 52.1[3]]; FALSE ARREST / FALSE IMPRISONMENT, BATTERY[4], ASSAULT, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENCE; *DILLON V. LEGG* CLAIM and INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, *MONELL* & SUPERVISORY LIABILITY CLAIMS

**JURY TRIAL DEMANDED**

    **COME NOW** plaintiffs Margaret Alba, individually and as guardian ad litem for minor children A.S., L.S. and S.S. and Daisy Sanchez, individually and as successors in interest to plaintiffs' decedent Leonard Angelo Sanchez, and Gloria Ann Almazon, and show this Honorable Court the following:

## JURISDICTIONAL ALLEGATIONS

---

[3] Survivor Claim via Cal. Civ. Proc. Code § 377.30.
[4] Direct liability and via survivor Claim under Cal. Civ. Proc. Code § 377.30.

1.    As this action is brought under 42 U.S.C. § 1983 this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.    As the incidents complained of in this action occurred in the City of Barstow, County of San Bernardino, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.    As plaintiffs' claims brought under California state law arise out of the same transactions and occurrences and out of a common nucleus of operative facts as the plaintiffs' federal questions claims, this court has jurisdiction over the plaintiffs' California state law claims under its Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

4.    Plaintiff Margaret Alba, individually and as guardian ad litem for minor children A.S.[5], L.S.[6] and S.S.[7], and Daisy Sanchez, individually and as successor in interest to Leonard Angelo Sanchez, timely filed plaintiffs' Government Claims for Damages against the City of Barstow and the County of

---

[5] Individually and as successor in interest to Leonard Angelo Sanchez.
[6] Individually and as successor in interest to Leonard Angelo Sanchez.
[7] Individually and as successor in interest to Leonard Angelo Sanchez.

SECOND AMENDED COMPLAINT FOR DAMAGES

3

San Bernardino on April 25, 2018 and April 30, 2018 respectively, pursuant to the California Tort Claims Act, Cal. Gov't. Code § 900 et seq., and said claim was denied by defendant County of San Bernardino on or about May 29, 2018, and as of the date of the filing of this instant complaint the City of Barstow has not responded to said claim for damages at all, making such claim being deemed denied by operation of law.

## GENERAL ALLEGATIONS

5.     Plaintiff Margaret Alba, hereinafter referred to as "MARGARET ALBA" and/or "plaintiff" and/or "Margaret Alba" is a natural person, who, at all times complained of in this action, resided in the State of California. Plaintiff Margaret Alba was the "girlfriend" of plaintiffs' decedent, Leonard Angelo Sanchez, and is also the biological mother, legal guardian and the guardian ad litem for plaintiff  Margaret Alba's and Leonard Angelo Sanchez' minor children A.S., L.S. and S.S., individually, and as successors in interest to plaintiffs' decedent, Leonard Angelo Sanchez; the father of A.S., L.S. and S.S..

6.     Plaintiff minor child, A.S., date of birth of March 4, 2005, hereinafter referred to as "A.S.," is a natural person, who, at all times complained of in this action, resided in the County of San Bernardino, State of California. At all times complained of herein, A.S. was the legal and natural daughter of her late father, plaintiffs' decedent Leonard Angelo Sanchez at the time of his death on February

25, 2018. Therefore, plaintiff minor child A.S. is an heir of Leonard Angelo Sanchez' under California law, and his successor in interest in this action pursuant to Cal. Civ. Proc. Code § 337.30.

7.      Plaintiff minor child L.S., date of birth June 20, 2008, hereinafter referred to as "L.S.," is a natural person, who, at all times complained of in this action, resided in the County of San Bernardino, State of California. At all times complained of herein, L.S. was the legal and natural son of his late father, plaintiffs' decedent Leonard Angelo Sanchez, at the time of his death on February 25, 2018. Therefore, plaintiff minor child L.S. is Leonard Angelo Sanchez' heir under California law and his successor in interest in this action pursuant to Cal. Civ. Proc. Code § 337.30.

8.      Plaintiff minor child S.S., date of birth November 11, 2014, hereinafter referred to as "S.S.," is a natural person, who, at all times complained of in this action, resided in the County of San Bernardino, State of California.  At all times complained of herein, S.S. was the legal and natural daughter of her late father, plaintiffs' decedent, Leonard Angelo Sanchez, at the time of his death on February 25, 2018. Therefore, plaintiff minor child S.S. is Leonard Angelo Sanchez' heir under California law and his successor in interest in this action pursuant to Cal. Civ. Proc. Code § 337.30.

9.      Plaintiff Daisy Marie Sanchez, date of birth June 21, 1998,

SECOND AMENDED COMPLAINT FOR DAMAGES
5

hereinafter referred to as "DAISY MARIE SANCHEZ," and/or "Daisy Sanchez" is a natural person, who, at all times complained of in this action, resided in the County of San Bernardino, State of California. At all times complained of herein, Daisy Marie Sanchez was the legal and natural adult daughter of her late father, plaintiffs' decedent, Leonard Angelo Sanchez, at the time of his death on February 25, 2018. Therefore, plaintiff adult child Daisy Marie Sanchez is Leonard Angelo Sanchez' heir under California law and his successor in interest in this action pursuant to Cal. Civ. Proc. Code § 337.30.

10.     Plaintiff Gloria Ann Almazon, hereinafter referred to as "ALMAZON", is the natural and legal mother of Plaintiffs' decedent, Leonard Angelo Sanchez.

11.     Plaintiffs' decedent, Leonard Angelo Sanchez, hereinafter referred to as "LEONARD ANGELO SANCHEZ", and/or "Leonard Angelo Sanchez" died intestate on February 25, 2018 at the Barstow Community Hospital in the City of Barstow, in San Bernardino County, California, from gunshot wounds inflicted upon him by the defendant Barstow police officers William Spiller II and Andrew Buesa in this action. At all times complained of LEONARD ANGELO SANCHEZ was a resident of the County of San Bernardino and State of California.

12.     Defendant City of Barstow, hereinafter also referred to as "City of

Barstow" or "CITY", is a political subdivision of the State of California and is a municipal entity, located in San Bernardino County; within the territorial jurisdiction of this Honorable Court.

13.    Defendant County of San Bernardino, hereinafter also referred to as "County of San Bernardino" or "COUNTY", is a political subdivision of the State of California and is a municipal entity, located within the territorial jurisdiction of this Honorable Court.

14.    Defendant Albert Ramirez, Jr., hereinafter referred to as "RAMIREZ", is a sworn police officer and the Chief of Police of the Barstow Police Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Barstow Police Department and defendant City of Barstow.

15.    Defendant William Spiller II, hereinafter referred to as "SPILLER", is a sworn police officer with the Barstow Police Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Barstow Police Department and defendant City of Barstow.

16.    Defendant Andrew Buesa, hereinafter referred to as "BUESA", is a sworn police officer with the Barstow Police Department, who, at all times

complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Barstow Police Department and defendant City of Barstow.

17.     Defendant Andrew Espinoza, Jr., hereinafter referred to as "ESPINOZA", is a sworn police officer and Captain and Supervisor with the Barstow Police Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Barstow Police Department and defendant City of Barstow.

18.     Defendant Thomas Lewis, hereinafter referred to as "LEWIS", is a sworn police officer and a Detective and Supervisor with the Barstow Police Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Barstow Police Department and defendant City of Barstow.

19.     Defendant Michael Cleary, hereinafter referred to as "CLEARY", is a sworn deputy sheriff, Detective and Corporal and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the San

Bernardino County Sheriff's Department and defendant County of San Bernardino.

20.     Defendant Arturo Alvarado, hereinafter referred to as "ALVARADO", is a sworn deputy sheriff, Detective and Corporal and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the San Bernardino County Sheriff's Department and defendant County of San Bernardino.

21.     Defendant Brendan Motley, hereinafter referred to as "MOTLEY", is a sworn deputy sheriff, Detective and Corporal and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the San Bernardino County Sheriff's Department and defendant County of San Bernardino.

22.     Defendant Michael Warrick, hereinafter referred to as "WARRICK", is a sworn deputy sheriff, Detective and Corporal and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was

acting in the course of and within the scope of his employment with the San Bernardino County Sheriff's Department and defendant County of San Bernardino.

23. Defendant Michael Walker, hereinafter referred to as "WALKER", is a sworn deputy sheriff, Sergeant and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the San Bernardino County Sheriff's Department and defendant County of San Bernardino.

24. Defendant Gerad Laing, hereinafter referred to as "LAING", is a sworn deputy sheriff and a Corporal and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the San Bernardino County Sheriff's Department and defendant County of San Bernardino.

25. Defendant James Tebbetts, hereinafter referred to as "TEBBETTS", is a sworn deputy sheriff and Corporal and Detective and Supervisor with the San Bernardino County Sheriff's Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the San

Bernardino County Sheriff's Department and defendant County of San
Bernardino.

26.     Defendant Jose Barrientos, hereinafter referred to as
"BARRIENTOS", is a sworn police officer and Corporal and Supervisor with the
Barstow Police Department, who, at all times complained of in this action was
acting as an individual person under the color of state law, and was acting in the
course of and within the scope of his employment with the Barstow Police
Department and defendant City of Barstow.

27.     Defendant Jarell Gilmore, hereinafter referred to as "GILMORE", is
a sworn police officer and Sergeant and Supervisor with the Barstow Police
Department, who, at all times complained of in this action was acting as an
individual person under the color of state law, and was acting in the course of and
within the scope of his employment with the Barstow Police Department and
defendant City of Barstow.

28.     Defendant Christopher Kirby, hereinafter referred to as "KIRBY", is
a sworn police officer and Lieutenant and Supervisor with the Barstow Police
Department, who, at all times complained of in this action was acting as an
individual person under the color of state law, and was acting in the course of and
within the scope of his employment with the Barstow Police Department and
defendant City of Barstow.

29.     Defendant Frank Benitez, hereinafter referred to as "BENITEZ", is a sworn police officer and Sergeant and Supervisor with the Barstow Police Department, who, at all times complained of in this action was acting as an individual person under the color of state law, and was acting in the course of and within the scope of his employment with the Barstow Police Department and defendant City of Barstow.

30.     Defendant John McMahon ("McMAHON") is the Sheriff of San Bernardino County, California. At all times complained of herein McMAHON was an individual person acting under the color of state law, and was acting in the course and scope of his employment with the County of San Bernardino, and was the top policymaking official of the San Bernardino County Sheriff's Department.

31.     Defendants DOES 1 through 3, inclusive, are sworn peace officers and/or police officers and/or supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant City of Barstow, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or who are otherwise responsible for and liable to plaintiffs for the acts complained of in this action, whose identities are and remain unknown to plaintiffs, who will amend their First Amended Complaint for Damages to add and to show the actual names of said DOE defendants when so ascertained by plaintiffs.

32.     Defendants DOES 4 through 6, inclusive, are sworn peace officers and/or deputy sheriffs and/or supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendants County of San Bernardino, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiffs for the acts complained of in this action, whose identities are and remain unknown to plaintiffs, who will amend their Complaint for Damages to add and to show the actual names of said DOE defendants when ascertained by plaintiffs.

33.     At all times complained of herein, DOES 7 and 8 were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and/or other Barstow public officials[8] and Supervisors and policy making officials, including the Chief of Police, Assistant Chiefs, Commanders,  Captains, Lieutenants or other policy making persons with defendant City of Barstow, City Manager and City Council Members and were acting in the course of and within the scope of their employment with defendants City of Barstow.  DOES 7 and 8 were in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the

_____

[8] Including Barstow City Council Members and the Barstow City Manager.

SECOND AMENDED COMPLAINT FOR DAMAGES

13

commission of the events complained of by plaintiffs in this case, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers and/or approving unconstitutional actions of subordinate officers), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the City of Barstow for: 1) wrongfully and unconstitutionally killing persons; 2) unlawfully using excessive / unreasonable force, including deadly force, on persons; 3) unlawfully searching and seizing persons; 4) unlawfully searching and seizing persons' homes and effects / personal property[9]; 5) falsely arresting and falsely imprisoning persons; 6) fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions; 7) "framing" / attempting to "frame" innocent persons in criminal actions[10], 8) violating and interfering with persons' constitutionally protected right to free speech and right to petition the government for redress of grievances; 9) violating, interfering with and depriving persons of their of

_____

[9] Such as by using and abusing the search warrant process along with the unlawful search and seizure of private residences, to perform civil liability investigations for the County of San Bernardino and for the City of Barstow, and not for the purpose of investigating criminal activity.
[10] To protect themselves and other police officers and deputy sheriffs and supervisory personnel from civil, administrative and criminal liability.

constitutionally protected parent - child relationships; 10) covering-up unlawful, felonious and tortious conduct by City of Barstow police officers and other City personnel, and were a proximate cause of the very same California state law, and federal and state statutory and constitutional violations complained of by the plaintiffs in this action.

34.     Defendants DOES 9 and 10, are sworn peace officers and/or other public officials such as the Sheriff, Undersheriff, Assistant Sheriffs, Commanders, Captains, Lieutenants, Sergeants, Detectives and/or other Supervisory personnel employed by COUNTY and/or the County Executive Officer and/or Members of the Board of Supervisors of San Bernardino County, and were policy making and/or final policy making officials[11] with the County of San Bernardino, who were acting in the course and scope of their employment with COUNTY, and are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the events complained of by plaintiffs in this action, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the

_____

[11] Including the County Board of Supervisors and the County Executive Officer.

SECOND AMENDED COMPLAINT FOR DAMAGES

creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the County of San Bernardino for: 1) wrongfully and unconstitutionally killing persons; 2) unlawfully using excessive / unreasonable force, including deadly force, on persons; 4) unlawful searching and seizing persons' homes and effects / personal property[12]; 5) falsely arresting and falsely imprisoning persons; 6) fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions; 7) "framing" / attempting to "frame" innocent persons in criminal actions[13], 8) violating and interfering with persons' constitutionally protected right to free speech and right to petition the government for redress of grievances; 9) violating, interfering with and depriving persons of their of constitutionally protected parent - child relationships; 10) covering-up unlawful and tortious conduct by the County of San Bernardino Deputy Sheriffs and other County personnel, and were a proximate cause of the very same California state law, and federal and state statutory and constitutional violations complained of by the plaintiffs in this action.

35.     Plaintiffs are presently unaware of the identities of DOES 1 through

_____

[12] Such as by using and abusing the search warrant process along with the unlawful search and seizure of private residences, to perform civil liability investigations for the County of San Bernardino and for the City of Barstow, and not for the purpose of investigating criminal activity.

[13] To protect themselves and other police officers and deputy sheriffs and supervisory personnel from civil, administrative and criminal liability.

10, inclusive, and will amend their Complaint for Damages to add and to show the actual names of said DOE defendants, when ascertained by plaintiffs.

36.    In addition to the above and foregoing, defendants RAMIREZ, SPILLER, BUESA, ESPINOZA, LEWIS, CLEARY, ALVARADO, MOTLEY, WARRICK, WALKER, LAING, TEBBETTS, BARRIENTOS, GILMORE, KIRBY, BENITEZ and DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiffs Margaret Alba, A.S., L.S., S.S., and Daisy Sanchez and Gloria Ann Almazon, and plaintiff's decedent Leonard Sanchez, of their federal and California Constitutional and statutory rights, as complained of in this action, and acted in joint, concerted and conspiratorial action to so deprive plaintiffs Margaret Alba, A.S., L.S., S.S., and Daisy Sanchez and Gloria Ann Almazon of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States and California Constitutional and statutory law.

37.    Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiffs Margaret Alba's, A.S.'s, L.S.'s, S.S.'s, and Daisy Sanchez' and Gloria Ann Almazon's federal and state constitutional and statutory rights, as complained of herein.

# FIRST CAUSE OF ACTION
## USE OF UNREASONABLE FORCE UPON PERSON UNDER FOURTH AMENDMENT[14]
### [42 U.S.C. § 1983]
### [Survivorship Claim Under Cal. Civ. Proc. Code § 377.30]
### (By Plaintiff Margaret Alba, as guardian ad litem for her minor children A.S., L.S. and S.S. as successors in interest to Leonard Angelo Sanchez, and by Daisy Sanchez, as a successor in interest to Leonard Angelo Sanchez, against Defendants SPILLER, BUESA, CITY and DOES 1 through 6, inclusive)

38.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 37, inclusive, above, as if set forth in full herein.

39.     On the evening of February 25, 2018, a "911 call" was made to the police by plaintiff Margaret Alba ("ALBA") regarding the behavior of Leonard Angelo Sanchez, as Leonard Angelo Sanchez was threatening to harm himself with a knife, and ALBA was worried that he might do so, and was, therefore, asking the police for help for Leonard Angelo Sanchez.

40.     Defendants SPILLER and BUESA were dispatched to and arrived at the Sands Motel[15], located at 924 East Main Street, Barstow, California where plaintiffs Margaret Alba, A.S., L.S., S.S. and Leonard Angelo Sanchez resided.

41.     When defendants SPILLER and BUESA arrived at the Sands Motel in response to ALBA's 911 call, Leonard Angelo Sanchez, minor plaintiff L.S.

---

[14] U.S. Const. Amend. 4.
[15] A residence type motel.

SECOND AMENDED COMPLAINT FOR DAMAGES
18

and Margaret Alba were standing outside of the doorway area of their motel room (Room Number 10), and A.S. and S.S. were inside said motel room.

42.    When defendants SPILLER and BUESA approached them minor plaintiff L.S. complained to his father, Leonard Angelo Sanchez, that he ruins everything, and walked into the motel room; behind Leonard Angelo Sanchez and plaintiff Margaret Alba who were standing outside of the motel room and facing SPILLER and BUESA.

43.    Plaintiff Margaret Alba told SPILLER and BUESA that they wanted Leonard Angelo Sanchez to leave their motel room and that he was acting crazy. Leonard Angelo Sanchez agreed (that he was crazy) he then displayed two kitchen knives with his right hand, and then held them one knife in each his hands in a nonthreatening manner to others.

44.    While holding the knives in his hand, defendant SPILLER pointed his pistol at Leonard Angelo Sanchez, and defendant BUESA pointed his taser at Leonard Angelo Sanchez, and both officers were yelling at Leonard Angelo Sanchez, ordering him to drop the knives.

45.    Leonard Angelo Sanchez did not expressly or impliedly threaten anyone other than himself, with said knives, and held them against flush against his front midsection.

46.    Margaret Alba then walked into the motel room.

SECOND AMENDED COMPLAINT FOR DAMAGES
19

47.     After defendants SPILLER and BUESA continued to point their weapons at Leonard Angelo Sanchez and demand that he drop the knives, and Leonard Angelo Sanchez turned to walk back into the motel room, and stopped at the doorway and looked back at said officers.

48.     Defendant BUESA said to SPILLER *"Do you want me to try to tase him?  Do you want me to try to tase him? Drop …. "*, and immediately thereafter BUESA fired his taser at Leonard Angelo Sanchez as he stood in the doorway.

49.     Immediately after BUESA shot Leonard Angelo Sanchez with his taser, SPILLER shot Leonard Angelo Sanchez with his pistol as he was still standing on the threshold of the doorway of the motel room.

50.     After the defendants SPILLER and BUESA shot Leonard Angelo Sanchez the first time, he fell onto the bed into a helpless position in the motel room. Margaret Alba kept yelling at the defendants SPILLER and BUESA: *"Don't shoot, don't shoot, he dropped the knife"*[16].

51.     At the time of the first shooting, all three minor children plaintiffs were in the room, including A.S., L.S., S.S., and they personally witnessed defendant SPILLER shoot their father, and the plaintiffs were in the line of fire such that SPILLER placed the plaintiffs in greater danger by shooting Leonard

---

[16] Or words to that effect.

Angelo Sanchez than any possible danger posed to them by Leonard Angelo Sanchez.

52.    Thereafter, notwithstanding Leonard Angelo Sanchez now lying on the bed and disabled by the gunshot wound, and not posing any threat to either the minor plaintiffs or plaintiff Margaret Alba, plaintiffs begged the officers not to shoot him again, but defendant SPILLER proceeded to shoot Leonard Angelo Sanchez two more times while he was in a supine position on the bed and posed a threat to no one.

53.    The additional two shots by defendant SPILLER occurred after Leonard Angelo Sanchez was already shot once, after he was lying on his back and on the bed inside the motel room, and posing no threat to anyone. The three gunshots also collectively resulted in Leonard Angelo Sanchez' death on February 25, 2018.

54.    After the defendant officers SPILLER and BUESA shot Leonard Angelo Sanchez, they pointed and brandished their weapons at the minor plaintiffs and Margaret Alba and ordered them to get out of their motel room, which was their home.

55.    Minor plaintiff A.S. was horrified and ran into the bathroom of the motel room.

56.    Plaintiff Margaret Alba then begged the defendant officers not to

shoot her children, and said defendant officers then pointed their guns at the plaintiffs, including the minor plaintiffs, and ordered them to exit the motel room.

57.    Plaintiffs were terrified, horrified and terrorized by seeing their father shot before their eyes, and were terrified by having guns pointed at them while being ordered to leave the motel room, and ran out of the motel room to comply with said defendants' orders.

58.    Said deadly shooting of Leonard Angelo Sanchez by said defendants SPILLER and BUESA also caused Leonard Angelo Sanchez to suffer severe physical injury and ultimately his death, as well as severe mental, emotional and physical pre-death, distress, pain and suffering; in an amount to be proven at trial, in excess of $3,000,000.00.

60.    Said shooting of Leonard Angelo Sanchez by defendants SPILLER and BUESA was done by said defendant police officers unreasonably, without reasonable cause to believe that Leonard Angelo Sanchez was such an imminent danger to others that it was reasonably necessary to shoot him at all, and was done without legal or moral justification for doing so.

61.    Accordingly, said shooting of Leonard Angelo Sanchez was done in violation of his right to be free from the use of unreasonable force upon his person under the Fourth Amendment to the United States Constitution.

62.    Said shooting of Leonard Angelo Sanchez by defendants SPILLER

SECOND AMENDED COMPLAINT FOR DAMAGES
22

and BUESA also caused plaintiffs' decedent Leonard Angelo Sanchez to suffer severe physical injuries, and severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, as well as other general and special damages, including but not limited to, lost wages / profits and other income that plaintiffs' decedent Leonard Angelo Sanchez would have earned / made / acquired during his lifetime, the loss of Leonard Angelo Sanchez's residence and the other property of Leonard Angelo Sanchez, funeral and burial expenses, hospital and other medical expenses and costs, and other special damages; all in an amount to be shown at trial, in excessive of $5,000,000.00.

63.     Said deadly shooting of Leonard Angelo Sanchez by defendants SPILLER and BUESA was done maliciously and in reckless disregard of Leonard Angelo Sanchez's constitutional rights; sufficient for an award of punitive damages against said defendants; in an amount to be shown at trial, in excessive of $3,000,000.00 for each plaintiff.

## SECOND CAUSE OF ACTION
### UNREASONABLE FORCE ON PERSON UNDER FOURTH AMENDMENT
### [42 U.S.C. § 1983]
### [Direct Liability Action]
### (By Plaintiff Margaret Alba, individually and as guardian ad litem for plaintiff minor children A.S., L.S. and S.S., against Defendants SPILLER, BUESA, CITY and DOES 1 through 6, inclusive)

64.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 63, inclusive, above, as if set forth in full herein.

SECOND AMENDED COMPLAINT FOR DAMAGES

65.     As set forth above, defendants SPILLER and BUESA, inclusive, pointed their guns at plaintiffs Margaret Alba, A.S., L.S. and S.S and yelled at them to get out of their motel room after said defendants shot Leonard Angelo Sanchez inside of said room.

66.     Defendants SPILLER and BUESA's pointing of their guns at the plaintiffs, above-referenced, was done by said defendants without any legal or moral justification for doing so. The plaintiffs did not commit any crimes and posed no threat to said defendants.

67.     Accordingly, defendants SPILLER and BUESA's pointing of their guns at plaintiffs Margaret Alba, A.S., L.S. and S.S constituted the threatened use of unreasonable deadly force upon the plaintiffs, in violation of their right to be free from the threatened use of unreasonable deadly force upon them under the Fourth Amendment of the United States Constitution.

68.     As a direct and proximate result of the actions of said defendants, plaintiffs Margaret Alba, A.S., L.S. and S.S.: 1) were substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, and 5) incurred other special and general damages and expenses, in an

amount to be proven at trial, in excess of $3,000,000.00 each.

69.     The actions by said defendants were committed maliciously and oppressively and in reckless disregard of the plaintiff's constitutional rights; sufficient for an award of punitive / exemplary damages against defendants SPILLER and BUESA in an amount to be proven at trial in excess of $3,000,000.00 for each plaintiff against each SPILLER and BUESA.

### THIRD CAUSE OF ACTION
### UNREASONABLE SEIZURE OF PERSON UNDER FOURTH AMENDMENT
### [42 U.S.C. § 1983]
### [Direct Liability Action]
### (By Plaintiff Margaret Alba, individually and as guardian ad litem for minor children A.S., L.S. and S.S., against Defendants)

70.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 69, inclusive, above, as though set forth in full herein.

71.     As shown above, on February 25, 2018, plaintiff Leonard Angelo Sanchez was shot with a taser by BUESA, and was immediately thereafter shot with a pistol three times by defendant SPILLER, which resulted in his death by said defendants.

72.     Moreover, as shown above, plaintiff Leonard Angelo Sanchez suffered severe injuries from gunshot wounds from being shot three times by defendant SPILLER, and from being shot with BUESA's taser.

73.     When defendants SPILLER and BUESA shot plaintiff  Leonard Angelo Sanchez, in the same room where plaintiffs Margaret Alba, A.S., L.S. and S.S. were and where they resided, defendants SPILLER and BUESA, and thereafter by defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, seized plaintiffs Margaret Alba, A.S., L.S. and S.S. and held them confined in other rooms at said motel, and thereafter took them against their will to the Barstow Police Department's Detective's Offices in Barstow, California and held them there against their will for several hours for interrogation by those San Bernardino County Sheriff's Department investigators shown above and below, pursuant to a policy, and longstanding custom and practice of both CITY and COUNTY, for Barstow Police Department Officers to unlawfully seize witnesses and victims of officer-involved-shootings (by Barstow Police Department officers) for them to be unlawfully interrogated by San Bernardino County Sheriff's Department officer-involved-shooting Investigators at said station, pursuant to such unlawful seizures of witnesses, to protect CITY and Barstow Police Department Officers from civil liability, from criminal liability and from obloquy.

74.     During said confinements (that constitute arrests) of the plaintiffs,

above-described at the motel and at the Barstow Police Station, initially by

defendants SPILLER and BUESA, and thereafter by defendants RAMIREZ

and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or

MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or

BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1

through 6, inclusive, was done by them to interrogate said plaintiffs for civil

liability purposes; not to investigate any crimes by them or by Leonard Angelo

Sanchez, but to get them to make inconsistent statements and other coerced /

tainted statements to them to attempt to protect defendants SPILLER, BUESA,

CITY and COUNTY from civil liability to said plaintiffs, and to protect

defendants SPILLER, BUESA and DOES 1 through 6, inclusive, from Internal

Discipline and possible criminal prosecution. This was standard, routine and

longstanding policy and practice of all defendants to protect themselves and each

other from civil liability, including seizing witnesses to police shootings and

interrogating them without telling them that the person who the police shot had

died.

     75.    Said defendants had no probable cause to believe that any of the

plaintiffs committed a crime, nor any reasonable suspicion of criminality afoot by

any of the plaintiffs, nor any reason to believe that the plaintiffs were doing

anything that posed or that would have posed any dangers to others, nor any

reason to believe that if they didn't obtain statements from the plaintiffs that day that they would not be able to locate the plaintiffs to obtain statements from them at some later date and time.

76.    Accordingly, said seizures (detentions and arrests) of the plaintiffs Margaret Alba, A.S., L.S. and S.S. by defendants SPILLER and BUESA, and thereafter by defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, was done in violation of their right to be free from an unreasonable seizure of their person under the Fourth Amendment to the United States Constitution.

77.    As a direct and proximate result of the actions of the unlawful / unreasonable seizure of plaintiffs by defendants SPILLER and BUESA, and thereafter by defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, plaintiffs: 1) were substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees

and associated litigation and other related costs, and 4) incurred the loss of

business wages and profits, 5) incurred other special and general damages and

expenses, in an amount to be proven at trial, in excess of $3,000,000.00 per

plaintiff.

78.    The actions of said defendants, and each of them, as complained of

herein, were committed maliciously, oppressively and in reckless disregard of

Plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary

damages against said defendants, in an amount to be proven at trial, in excess of

$3,000,000.00 for each plaintiff.

### FOURTH CAUSE OF ACTION
**LOSS OF PARENT- CHILD RELATIONSHIP WITHOUT DUE PROCESS
OF LAW UNDER FOURTEENTH AMENDMENT
[42 U.S.C. § 1983]
[Direct Liability Action]
(By Plaintiff Margaret Alba, as guardian ad litem for minor children A.S., L.S.
and S.S., and Daisy Sanchez and Gloria Ann Almazon against Defendants
SPILLER, BUESA and CITY)**

79.    Plaintiffs hereby reallege and incorporate by reference the allegations

set forth in paragraphs 1 through 78, inclusive, above, as though set forth in full

herein.

80.    The unlawful killing of plaintiffs' decedent, Leonard Angelo

Sanchez, by defendants SPILLER and BUESA, described-above, was done by

them with a deliberate indifference to and a reckless disregard of the plaintiffs'

child-parent / parent-child relationships with their father and son, Leonard Angelo Sanchez, and deprived minor children plaintiffs A.S., L.S., S.S., adult plaintiff Daisy Sanchez and plaintiff Gloria Ann Almazon (the Mother of Leonard Angelo Sanchez) of their Parent – Child Relationship with Leonard Angelo Sanchez, and deprived said plaintiffs of their rights guaranteed to them under the Fourteenth Amendment to the United States Constitution[17].

81.     The use of unreasonable force upon Leonard Angelo Sanchez that resulted in the unlawful killing of him by defendants SPILLER and BUESA was done intentionally, was done in a manner that constituted the use of unreasonable force, and was done in a manner that constituted a deliberate indifference to and reckless disregard of Leonard Angelo Sanchez's life and to said Child – Parent Relationship, and constituted outrageous behavior that was shocking to the conscience.

82.     Moreover, the ordering of the plaintiffs out of their motel room while their father and the father of Margaret Alba's children was laying on the bed in the room, dying, and wanting to be comforted by his children, and with his children not wanting to leave their dying father's presence, deprived the plaintiffs of their

---

[17] As shown above, plaintiff Margaret Alba is Guardian Ad Litem for the minor plaintiffs A.S., L.S. and S.S., successors in interest, to plaintiffs' decedent Leonard Angelo Sanchez.

right to be with their dying father while he was still alive; also in violation of the plaintiffs Parent – Child Relationship with Leonard Angelo Sanchez.

83. The unlawful killing of plaintiffs' deceased, Leonard Angelo Sanchez, by defendants SPILLER and BUESA, above-referenced, and the ordering of the minor plaintiffs outside of their motel room also caused plaintiffs Gloria Ann Almazon, Daisy Sanchez, A.S., L.S. and S.S. to suffer the loss of their father and son Leonard Angelo Sanchez's society, the loss of his solace and comfort, companionship, as well as caused them to suffer great mental and emotional and distress, pain and suffering and loss of support, and special damages such as support and other monies and property from their late father and son in an amount to be shown at trial, in excess of $10,000,000.00 each.

84. The unlawful killing of Leonard Angelo Sanchez by defendants SPILLER and BUESA was done maliciously and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive damages against defendants SPILLER and BUESA; all in an amount to be shown at trial, in excess of $3,000,000.00 for each plaintiff against both SPILLER and BUESA.

**FIFTH CAUSE OF ACTION**
**UNLAWFUL SEIZURE OF PRIVATE RESIDENCE**
**[42 U.S.C. § 1983]**
**[Direct Liability Action]**
**(By Plaintiff Margaret Alba, individually and as guardian ad litem for plaintiff minor children A.S., L.S. and S.S., against Defendants SPILLER and BUESA)**

SECOND AMENDED COMPLAINT FOR DAMAGES

85.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 84, inclusive, above, as though set forth in full herein.

86.     When defendants SPILLER and BUESA shot plaintiff Leonard Angelo Sanchez, in the same room where plaintiffs Margaret Alba, A.S., L.S. and S.S. were and where they resided, defendants SPILLER and BUESA seized plaintiffs Margaret Alba, A.S., L.S. and S.S., and held them confined in other rooms at said motel.

87.     In addition, after shooting Leonard Angelo Sanchez, defendants SPILLER and BUESA pointed their guns at plaintiffs Margaret Alba, A.S., L.S. and S.S. and yelled at them to get out of their motel room; essentially threatening them with being shot for their refusal / failure to exit their motel room.

88.     Said plaintiffs exited their motel room pursuant to said defendants' orders to do so; above-referenced.

89.     Soon thereafter, defendants SPILLER and BUESA closed the door of the plaintiff's motel room; preventing the plaintiffs or anyone else from seeing what was going on inside of the motel room.

90.     Moreover, defendants SPILLER and BUESA kept the plaintiffs from access to their personal property that was inside of the motel room when the plaintiffs were forced out of the same.

91.     Accordingly, the actions of defendants SPILLER and BUESA in forcing the plaintiffs out of their motel room and keeping them out of the same constituted a seizure of the plaintiffs' residence by said defendants, in the absence of a warrant or any other legal justification for the same; in violation of the plaintiffs right to be in their own residence under the Fourth Amendment to the United States Constitution.

92.     As a direct and proximate result of the actions of defendants SPILLER and BUESA the unlawful / unreasonable seizure of plaintiffs residence, plaintiffs: 1) were substantially physically injured, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $3,000,000.00.

93.     The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

## SIXTH CAUSE OF ACTION
**UNLAWFUL SEARCH AND SEIZURE OF PRIVATE RESIDENCE**
**[42 U.S.C. § 1983]**
**[Direct Liability Action]**
**(By Plaintiff Margaret Alba, individually and as guardian ad litem for plaintiff minor children A.S., L.S. and S.S., against all Defendants)**

94.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 93, inclusive, above, as though set forth in full herein.

95.    As alleged above, when defendants SPILLER and BUESA shot plaintiff Leonard Angelo Sanchez, in the same room where plaintiffs Margaret Alba, A.S., L.S. and S.S. were, and where they resided, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, seized plaintiffs Margaret Alba, A.S., L.S. and S.S., and held them confined in other rooms at said motel, and thereafter took them against their will to, and imprisoned them at the Barstow Police Department's Detective's Offices in Barstow, California.

96.    In addition, as alleged above, after shooting Leonard Angelo Sanchez defendants SPILLER and BUESA pointed their guns at plaintiffs Margaret Alba, A.S., L.S. and S.S. and yelled at them to get out of their motel room; essentially

threatening them with being shot for their refusal / failure to exit their motel room.

97.    In addition, as alleged above, said plaintiffs exited their motel room pursuant to said defendants' demands to do so; above-referenced.

98.    In addition, as alleged above, defendants SPILLER and BUESA, and thereafter defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, used yellow police tape to cordon-off the area around and their motel room at the Sands Motel, to keep them and others away from and out of the plaintiff's motel room.

99.    Moreover, as alleged above, defendants SPILLER and BUESA, and thereafter defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, ejected the plaintiffs out of their motel room, to prevent them from gathering evidence showing the wrongfulness of the shooting of Leonard Angelo Sanchez, and allowing them to do the civil liability investigation to protect SPILLER and BUESA and CITY from civil liability.

100.   Moreover, as alleged above, defendants SPILLER and BUESA, and

SECOND AMENDED COMPLAINT FOR DAMAGES
35

thereafter defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, kept the plaintiffs from access to their personal property that was inside of the motel room when the plaintiffs were forced out of the same.

101.   In addition to the above and foregoing, following defendants SPILLER and BUESA, and thereafter defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, forcing the plaintiffs out of their motel room, defendants SPILLER, BUESA and/or RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, unlawfully obtained a search warrant for the search of said motel room; not to investigate criminal behavior, but to perform a civil liability investigation for the City of Barstow by the County of San Bernardino; an abuse of the search warrant provisions of California and federal statutory and constitutional law.

102.   The affidavit for the search warrant (i.e. Statement of Probable Cause) was devoid of any facts that indicated that the defendants were even doing any sort of criminal investigation, and only showed that pursuant to the policies and the longstanding customs and practices of the Barstow Police Department and the San Bernardino County Sheriff's Department, the defendants were abusing the search warrant process to unlawfully conduct a Civil Liability Investigation for the Barstow Police Department and for SPILLER and BUESA; to protect them from civil liability for the shooting of Leonard Angelo Sanchez described above.

103.   Moreover, even if said defendants were doing a criminal investigation regarding the shooting of Leonard Angelo Sanchez, the Statement of Probable Cause for the search warrant contained no facts that showed either that any crime had been committed, especially any felony, or, that the search of the plaintiff's motel room was likely to contain evidence of any crime.

104.   No reasonable police officer could have believed that said search warrant application was sufficient to pass muster under Fourth Amendment scrutiny. Nonetheless the judge issued the search warrant, as they routinely do without sufficient legal cause to do so.

105.   In any case, said defendants searched the plaintiffs' motel room at the Sands Motel while the plaintiffs were being held against their will in the Barstow Police Department; in violation of the plaintiffs' rights under the Fourth Amendment

to the United States Constitution.

106.   As a direct and proximate result of the actions of defendants SPILLER, BUESA and/or RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive,  unlawfully / unreasonably searching of plaintiffs' motel room, plaintiffs were: 1) substantially physically injured, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

107.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

/ / /

/ / /

## SEVENTH CAUSE OF ACTION
### Wrongful Death[18] Under California State Law
### [Direct Liability Action]
### (By Plaintiffs Margaret Alba, as guardian ad litem for minor children A.S., L.S. and S.S. and Daisy Sanchez, against all defendants SPILLER, BUESA and DOES 1 through 3, inclusive, and CITY)

108.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 107, inclusive, above, as if set forth in full herein.

109.   As alleged above, when defendants SPILLER and BUESA arrived at the Sands Motel in response to ALBA's 911 call, Leonard Angelo Sanchez, minor plaintiff L.S. and Margaret Alba were standing outside of the doorway area of their motel room (Room Number 10), and A.S. and S.S. were inside said motel room.

110.   When defendants SPILLER and BUESA approached them minor plaintiff L.S. complained to his father, Leonard Angelo Sanchez, that he ruins everything, and walked into the motel room; behind Leonard Angelo Sanchez and plaintiff Margaret Alba who were standing outside of the hotel room.

111.   Plaintiff Margaret Alba told SPILLER and BUESA that they wanted Leonard Angelo Sanchez to leave their motel room and that he was acting crazy,

---

[18] Based on California state law; Cal. Civ. Proc. Code § 377.60 *et seq.*

SECOND AMENDED COMPLAINT FOR DAMAGES

and Leonard Angelo Sanchez agreed, and then displayed two kitchen knives, and held them in his hand in a nonthreatening manner to others; only to himself.

112.   While holding the knives in his hands, defendant SPILLER pointed his pistol at Leonard Angelo Sanchez, and defendant BUESA pointed his taser at Leonard Angelo Sanchez and both officers were yelling at Leonard Angelo Sanchez; ordering Leonard Angelo Sanchez to drop the knives.

113.   Leonard Angelo Sanchez did not expressly or impliedly threaten anyone other than himself, with said knives, and held them against flush against his front midsection.

114.   Margaret Alba then walked into the motel room.

115.   After defendants SPILLER and BUESA continued to point their weapons at Leonard Angelo Sanchez and demand that he drop the knives, and Leonard Angelo Sanchez began to turn to into the motel room, and stopped at the doorway and looked back at said officers.

116.   Defendant BUESA said to SPILLER *"Do you want me to try to tase him?  Do you want me to try to tase him? Drop .... "*, and immediately thereafter fired his taser at Leonard Angelo Sanchez as he stood in the doorway.

117.   Immediately after BUESA shot Leonard Angelo Sanchez with his taser, SPILLER shot Leonard Angelo Sanchez with his pistol as he was still standing on the threshold of the doorway of the motel room.

118.   After the defendants SPILLER and BUESA shot Leonard Angelo Sanchez the first time, he fell onto the bed into a helpless position in the motel room, with Margaret Alba and the minor plaintiffs out of the reach of Leonard Angelo Sanchez.  Margaret Alba kept yelling at the defendants SPILLER and BUESA: *"Don't shoot, don't shoot, he dropped the knife"*[19].

119.   At the time of the first shooting, all three minor children plaintiffs were in the room, including A.S., L.S., S.S., and they personally witnessed defendant SPILLER shoot their father, and the plaintiffs were in the line of fire such that SPILLER placed the plaintiffs in greater danger by shooting Leonard Angelo Sanchez, than any danger posed to them by Leonard Angelo Sanchez.

120.   Thereafter, notwithstanding Leonard Angelo Sanchez now lying on the bed and disabled by the gunshot wound, and not posing any threat to either the minor plaintiffs or plaintiff Margaret Alba. The plaintiffs begged the officers not to shoot him again, but defendant SPILLER proceeded to shoot Leonard Angelo Sanchez two more times while he was in a supine position on the bed and posed a threat to no one.

121.   The additional two shots by defendant SPILLER occurred after Leonard Angelo Sanchez was already shot once, and after he was lying on his

---

[19] Or words to that effect.

back and on the bed inside the motel room, and posed no threat to anyone, and Margaret Alba kept yelling at the defendants SPILLER and BUESA: *"Don't shoot, don't shoot, he dropped the knife"*[20]. Moreover, at most only the use of non-lethal force could have arguably been justified to use on Leonard Angelo Sanchez, such as the taser that BUESA used upon Leonard Angelo Sanchez.

122.   Margaret Alba kept yelling at the defendants SPILLER and BUESA: *"Don't shoot, don't shoot, he dropped the knife"*[21].

123.   As alleged above, at the time of the first shootings by SPILLER and BUESA, all three minor children plaintiffs were in the room, including A.S., L.S., S.S., and they personally witnessed defendant SPILLER shoot their father.

124.   As alleged above, after the defendant officers shot Leonard Angelo Sanchez they pointed their weapons at the minor plaintiffs and Margaret Alba and ordered them to get out of the motel room.

125.   As alleged above, minor plaintiff A.S. was horrified and ran into the bathroom of the motel room.

126.   As alleged above, plaintiff Margaret Alba then begged the defendant officers not to shoot her children, and said defendant officers then pointed /

---

[20] Or words to that effect.
[21] Or words to that effect.

brandished their guns at the plaintiffs, including the minor plaintiffs, and ordered them to exit the motel room.

127.   As alleged above, plaintiffs were terrified by seeing their father wrongfully shot before their eyes, and were terrified by having guns pointed at them while being ordered to leave their motel room, and ran out of the motel room to comply with said defendants' orders.

128.   As alleged above, when defendants SPILLER and BUESA shot plaintiff Leonard Angelo Sanchez, in the same room where plaintiffs Margaret Alba, A.S., L.S. and S.S. were and where they resided, defendants SPILLER and BUESA, and thereafter defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive,  seized plaintiffs Margaret Alba, A.S., L.S. and S.S., and held them confined in other rooms at said motel, and thereafter took them against their wills to the Barstow Police Department's Detective's Offices in Barstow, California and confined them there.

129.   As alleged above, after shooting Leonard Angelo Sanchez, defendants SPILLER and BUESA, pointed their guns at plaintiffs Margaret Alba, A.S., L.S. and S.S. and yelled at them to get out of their motel room.

130.   As alleged above, also as set forth above, said plaintiffs exited their

motel room pursuant to defendants' demands to do so; above-referenced.

131.   As alleged above, said deadly shooting of Leonard Angelo Sanchez by defendants SPILLER and BUESA also caused Leonard Angelo Sanchez to suffer severe physical injury and ultimately his death, as well as severe mental, emotional and physical pre-death distress, pain and suffering; in an amount to be proven at trial, in excess of $3,000,000.00 per plaintiff.

132.   As alleged above, said shooting of Leonard Angelo Sanchez by defendants SPILLER and BUESA was done by defendant police officers without reasonable cause to believe that Leonard Angelo Sanchez was such a danger to others that is was reasonably necessary to shoot him at all, and was done without legal or moral justification for doing so.

133.   It was more dangerous to plaintiffs for SPILLER to have shot at Leonard Angelo Sanchez as he stood on the threshold of the doorway to said room, than any danger posed by Leonard Angelo Sanchez entering said motel room.

134.   Therefore, said defendants are liable to said plaintiffs for the wrongful death of Leonard Angelo Sanchez pursuant to Cal. Civ. Proc. Code § 377.60 and otherwise pursuant to Cal. Civ. Proc. Code §§ 815.2, 815.2(a), 815.6, 820, 820.4 and 820.8.

135.   As a direct and proximate result of the actions of defendants SPILLER and BUESA plaintiffs suffered the loss of the relationship with their

father, Leonard Sanchez, including his society, comfort, solace, guidance and support as well as burial / funeral costs/expenses, medical and psychological costs/bills and expenses, loss of financial support; all in an amount to be proven at trial; in excess of $5,000,000.00 for each plaintiff.

136.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

## EIGHTH CAUSE OF ACTION
### False Arrest / False Imprisonment
### Under California State Law
### [Direct Liability Action]
### (By Plaintiffs Margaret Alba, individually and as guardian ad litem for minor children A.S., L.S., and S.S., against all defendants)

137.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 136, inclusive, above, as if set forth in full herein.

138.   As complained of above, plaintiff Margaret Alba and minor plaintiffs A.S., L.S., and S.S. were unlawfully seized and "arrested" by defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY

and/or BENITEZ and DOES 1 through 6, inclusive, on February 25, 2018 by first confining them to another quest room at the Sands Motel, and thereafter taking them to the Barstow Police Department Detective's Building against their will, and imprisoning them there, to be interrogated by the Barstow Police Department and the San Bernardino County to be interrogated to obtain information from them, and to trick / coerce them into making custodial statements that could be used against them in any future civil litigation against the defendants for their unlawful shooting of Leonard Angelo Sanchez.

139.   This false arrest / false imprisonment of the plaintiffs was done pursuant to the policies and longstanding customs and practices of the Barstow Police Department and the San Bernardino County Sheriff's Department to interrogate witnesses to officer-involved-shootings while they are in police custody, to obtain information from them, and to trick / coerce them into making custodial statements that could be used against them in any future civil litigation against the defendants / shooting officers for their unlawful shooting of Leonard Angelo Sanchez.

140. The San Bernardino County Sheriff's Department and the Barstow Police Department has for many years now unlawfully seized witnesses to Officer-Involved-Shootings, and have unlawfully taken them into police custody, and routinely do not tell the witnesses, especially relatives of the persons shot by

the police, that the person who was shot was already dead; full well knowing that if they told the witness who were unlawfully seized and interrogated that the person shot / killed was dead, that the witnesses would not have told the Barstow Police Department and/or the San Bernardino County Sheriff's Department what they saw and know about the shooting, and about the person shot or otherwise unlawfully killed by the police.

141.   As complained of above, said defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, had neither reasonable suspicion of criminality afoot about plaintiffs Margaret Alba, A.S., L.S. and S.S., nor probable cause to believe that plaintiffs had committed a crime.

142.   Defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, and CITY and COUNTY are liable to plaintiffs Margaret Alba, A.S., L.S. and S.S. for their false arrests / false imprisonments pursuant to Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.4 and 820.8.

143.   In addition, said defendants had no reason to believe that the plaintiffs could not be easily located if the Barstow Police Department and/or the San Bernardino County Sheriff's Department desired to contact them in the future to question.

144.   As a direct and proximate result of the actions of defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, CITY and COUNTY, plaintiffs Margaret Alba, A.S., L.S. and S.S. were: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00 for each plaintiff.

145.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant CITY and COUNTY, in an amount to be proven at trial in excess of

$3,000,000.00 for each plaintiff.

## NINTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress[22]; *Dillon v. Legg* Claim
### Under California State Law
### [Direct Liability Action]
### (By Plaintiffs Margaret Alba, individually and as guardian ad litem for minor children A.S., L.S., and S.S., against all defendants and DOES 1 through 6, inclusive, and defendant CITY)

146.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 145, inclusive, above, as if set forth in full herein.

147.    Defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, and each of them, knew and/or should have known that plaintiffs Margaret Alba, A.S., L.S., and S.S. were susceptible to suffering severe emotional distress from the actions taken and committed against Leonard Sanchez and against said plaintiffs as complained of above and herein, including the wrongful and unlawful shooting of Leonard Sanchez right in front of them and while causing said , the pointing of guns at the plaintiffs in / at the motel room, the ordering of the plaintiffs to exit their motel

---

[22] *Dillon v. Legg* claim.

room, and the "arrests" and interrogations of the plaintiffs; especially doing so while not telling them that Leonard Angelo Sanchez was already dead before they were interrogated.

148.   Each of said plaintiffs were in close physical proximity to and witnesses to the shooting / killing of their father, Leonard Angelo Sanchez, and were in close physical proximity to and were witnesses to said wrongful, tortious and outrageous actions by said defendants being perpetrated against their fellow plaintiffs, above-described.

149.   Moreover, the conduct of said defendants, for all of the incidents complained of herein, were outrageous and not the type of conduct condoned in a civilized society.

150.   Therefore, said defendants are liable to said plaintiffs for the severe emotional distress inflicted upon them as well as the wrongful death of Leonard Angelo Sanchez, pursuant to Cal. Civ. Proc. Code § 377.60 and otherwise pursuant to Cal. Civ. Proc. Code §§ 815.2, 815.2(a), 815.6, 820, 820.4 and 820.8.

151.   As a direct and proximate result of the actions of defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, plaintiffs were: 1) substantially

physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses; 3) incurred attorney's fees and associated litigation and other related costs; and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00 for each plaintiff.

152.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendants CITY, in an amount to be proven at trial in excess of $10,000,000.00 for each plaintiff.

## TENTH CAUSE OF ACTION
### NEGLIGENCE[23]
### Under California State Law
### [Direct Liability Action]
**(By Plaintiffs Margaret Alba, individually and as guardian ad litem for minor plaintiffs A.S., L.S. and S.S. and Daisy Sanchez, against all defendants)**

153.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 152, inclusive, above, as if set forth in full herein.

---

[23] Based on California state law.

154.    Defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, owed plaintiffs Margaret Alba, A.S., L.S., S.S. and Daisy Sanchez, and decedent Leonard Angelo Sanchez, a duty to use due care regarding the safety and well-being of their persons and their rights.

155.    As set forth above, said defendants breached their duty of using due care toward plaintiffs Margaret Alba, minor plaintiffs A.S., L.S. and S.S., plaintiff Daisy Sanchez and plaintiffs' decedent Leonard Angelo Sanchez by their actions described above and below, to wit; shooting Leonard Angelo Sanchez when a reasonably well trained police officer would have known that sufficient circumstances did not justify the shooting and while placing the plaintiffs in greater danger than if they did not shoot at all, also by failing to just use non-lethal force upon Leonard Angelo Sanchez (i.e. a taser), and by pointing their weapons at the plaintiffs, ordering the plaintiffs out of their motel room, unlawfully seizing and searching the plaintiff motel room, unlawfully seizing and interrogating the plaintiffs; all as described above.

156.    Therefore, said defendants are liable to said plaintiffs for the wrongful death of Leonard Angelo Sanchez pursuant to Cal. Civ. Proc. Code §

377.60 and otherwise pursuant to Cal. Civ. Proc. Code §§ 815.2, 815.2(a), 815.6, 820, 820.4 and 820.8, and Cal. Civil Code § 1714.

157.    As shown above, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, breached their duty of care to plaintiffs Margaret Alba, A.S., L.S., S.S., Daisy Sanchez and decedent Leonard Angelo Sanchez when they: 1) wrongfully and unlawfully shot and killed Leonard Sanchez, 2) pointed their guns at the plaintiffs in / at the motel room, 3) ordered of the plaintiffs to exit their motel room, 4) closed of the door to and the drapes inside of the plaintiffs' motel room, 5) "arrested" and "interrogated" the plaintiffs, 6) unlawfully seized the plaintiffs' motel room, 7) unlawfully searched the plaintiffs' motel room, and committed the other wrongful actions complained of herein.

158.  As a direct and proximate result of the actions of said defendants' negligent actions, plaintiffs: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses; 3) incurred funeral / burial expenses; and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of

$10,000,000.00.

### ELEVENTH CAUSE OF ACTION
### TRESPASS TO RESIDENCE[24]
### Under California State Law
### [Direct Liability Action]
### (By Plaintiff Margaret Alba, as guardian ad litem for minor children A.S., L.S. and S.S. against all defendants)

159.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 158, inclusive, above, as though set forth in full herein.

160.   As alleged above, when defendants SPILLER and BUESA shot plaintiff Leonard Angelo Sanchez, in the same room where plaintiffs Margaret Alba, A.S., L.S. and S.S. were and where they resided, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, seized plaintiffs Margaret Alba, A.S., L.S. and S.S., and their older sister Daisy Sanchez, and held them confined in other rooms at said motel, and thereafter took them against their wills to the Barstow Police Department's Detective's Offices in Barstow, California.

---

[24] Based on California state law.

161.   In addition, as alleged above, after shooting Leonard Angelo Sanchez, defendants SPILLER and BUESA pointed their guns at plaintiffs Margaret Alba, A.S., L.S. and S.S. and yelled at them to get out of their motel room; essentially threatening them with being shot for their refusal / failure to exit their motel room.

162.   In addition, as alleged above, said plaintiffs exited their motel room pursuant to defendants' demands to do so; above-referenced.

163.   In addition, as alleged above, thereafter, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, closed the door of the plaintiffs' motel room; preventing the plaintiffs or anyone else from seeing what was going on inside of the motel room.

164.   In addition, as alleged above, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, used yellow police tape to cordon-off the area around and their motel room at the Sands Motel, to keep them and others away from

and out of the plaintiff's motel room.

165.   Moreover, as alleged above, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, ejected the plaintiffs out of their motel room.

166.   Moreover, as alleged above, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, DOES 1 through 6, inclusive, kept the plaintiffs from access to their personal property that was inside of the motel room when the plaintiffs were forced out of the same.

167.   In addition to the above and foregoing, following defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, forced the plaintiffs out of their motel room.

168.   In addition to the above and foregoing, following defendants SPILLER

and BUESA, and thereafter defendants RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, forcing the plaintiffs out of their motel room, defendants SPILLER, BUESA and/or RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, unlawfully obtained a search warrant for the search of said motel room; not to investigate criminal behavior, but to perform a civil liability investigation for the City of Barstow by the County of San Bernardino; an abuse of the search warrant provisions of California and federal statutory and constitutional law.

169.   The affidavit for the search warrant (i.e. Statement of Probable Cause) was devoid of any facts that indicated that the defendants were even doing any sort of criminal investigation, and only showed that pursuant to the policies, customs and practices of the Barstow Police Department and the San Bernardino County Sheriff's Department, the defendants were abusing the search warrant process to unlawfully conduct a Civil Liability Investigation for the Barstow Police Department and for SPILLER and BUESA; to protect them from civil liability for

the shooting of Leonard Angelo Sanchez described above.

170.   Moreover, even if said defendants were doing a criminal investigation regarding the shooting of Leonard Angelo Sanchez, the Statement of Probable Cause for the search warrant contained no facts that showed either that any crime had been committed, especially any felony, or, that the search of the plaintiff's motel room was likely to contain evidence of any crime.

171.   No reasonable police officer could have believed that said search warrant application was sufficient to pass muster under Fourth Amendment scrutiny. Nonetheless the judge issued the search warrant.

172.   In any case, said defendants search of the plaintiffs' motel room at the Sands Motel, constituted a trespass to plaintiffs' residence under California state law. Therefore, said defendants are liable to said plaintiffs for said a trespass to plaintiffs' residence pursuant to Cal. Civ. Proc. Code §§ 815.2, 815.2(a), 815.6, 820, 820.4 and 820.8.

173.   As a direct and proximate result of the actions of defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive, unlawfully / unreasonably entering and searching plaintiffs' motel room, plaintiffs were: 1) were

substantially physically injured, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $3,000,000.00 each.

174.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

### TWELFTH CAUSE OF ACTION
### *MONELL*[25] AND SUPERVISORY LIABILITY
### [42 U.S.C. § 1983]
### (By Plaintiff Margaret Alba, as guardian ad litem for minor children A.S., L.S. S.S. and Daisy Sanchez, individually as successors in interest to Leonard Sanchez, against defendants RAMIREZ, McMAHON, CITY and COUNTY and DOES 7 through 10, inclusive)

175.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 174, inclusive, above, as though set forth in full herein.

---

[25] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

176.   Defendants RAMIREZ and DOES 7 and 8, inclusive were final policy making officials with defendant City of Barstow.

177.   Defendants McMAHON and DOES 9 and 10, inclusive were final policy making officials with defendant County of San Bernardino.

178.   Defendants RAMIREZ, McMAHON and DOES 7 through 10, inclusive, and were in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the events complained of by plaintiffs in this case, such as via the creation and maintenance of the unconstitutional policies, customs and practices complained of above regarding the handling of Officer-Involved-Shootings and the Investigations of the same[26], and via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers and/or approving unconstitutional actions of subordinate officers), via bystander liability (failing to intervene in and stop

---

[26] The San Bernardino County Sheriff's Department and the Barstow Police Department has for many years now unlawfully seized witnesses to Officer-Involved-Shootings, and have unlawfully taken them into police custody to interrogate them for Civil Liability purposes and not to investigate criminal conduct, and has routinely not told the seized witnesses, especially relatives of the persons shot / killed by the police that the person shot / killed was already dead; full well knowing that if they told the witness who were unlawfully seized and interrogated that the person shot / killed by the police was dead, that the witnesses would not have told the Barstow Police Department and the San Bernardino County Sheriff's Department what they saw and know about the shooting and the person shot or otherwise unlawfully killed by the police. Those policies, customs and practices of the Barstow Police Department and the San Bernardino County Sheriff's Department also involve unlawfully seizing the place where the police killed another, and unlawfully obtaining search warrants to do Civil Liability Investigations to protect the police / deputies and their employing entities from civil liability.

unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or longstanding practices and/or longstanding customs and/or longstanding usages of defendant City of Barstow for: 1) wrongfully and unconstitutionally killing persons; 2) using excessive / unreasonable force on persons; 3) unlawfully searching and seizing persons; 4) unlawful searching and seizing persons' homes and effects / personal property; 5) falsely arresting and falsely imprisoning persons; 6) fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions; 7) "framing" / attempting to "frame" innocent persons in criminal actions[27], 8) violating and interfering with persons' constitutionally protected right to free speech and right to petition the government for redress of grievances; 9) violating, interfering and depriving persons of their of constitutionally protected parent-child relationships; 10) covering-up unlawful and tortious conduct by the City of Barstow police officers and other City personnel and 11) falsely, corruptly, wrongfully and unconstitutionally obtaining search warrants for private residences to perform civil liability investigations to protect themselves, the City of Barstow and City of

---

[27] To protect themselves and other police officers and deputy sheriffs and supervisory personnel from civil, administrative and criminal liability.

Barstow police officers from civil, criminal and administrative liability, and were

a proximate cause of the very same California state law, and federal and state

constitutional violations complained of by the plaintiffs in this action.

179.   Defendants RAMIREZ, McMAHON, CITY and COUNTY and

DOES 7 through 10, inclusive, were in some substantial way liable and

responsible for, or otherwise proximately caused and/or contributed to the events

complained of by plaintiffs in this case, such as via supervisory liability (i.e.

failure to properly supervise, improperly directing subordinate officers and/or

approving unconstitutional actions of subordinate officers), via bystander liability

(failing to intervene in and stop unlawful actions of their subordinates and/or other

officers), and such as by creating and/or causing the creation of and/or

contributing to the creation of the policies and/or practices and/or customs and/or

usages of the County of San Bernardino for: 1) wrongfully and unconstitutionally

killing persons; 2) using excessive / unreasonable force on persons; 3) unlawfully

searching and seizing persons; 4) unlawful searching and seizing persons' homes

and effects / personal property; 5) falsely arresting and falsely imprisoning

persons; 6) fabricating / destroying / concealing / altering / withholding evidence

in criminal and civil actions; 7) "framing" / attempting to "frame" innocent

persons in criminal actions[28], 8) violating and interfering with persons'

constitutionally protected right to free speech and right to petition the government

for redress of grievances; 9) violating, interfering and depriving persons of their of

constitutionally protected parent child relationships; 10) covering-up unlawful and

tortious conduct by the County of San Bernardino deputy sheriffs and supervisors

and other County of San Bernardino personnel and 11) falsely, corruptly,

wrongfully and unconstitutionally obtaining search warrants for private residences

to perform civil liability investigations to protect themselves, the City of Barstow

and City of Barstow police officers from civil, criminal and administrative

liability, and were a proximate cause of the very same California state law, and

federal and state constitutional violations complained of by the plaintiffs in this

action.

180.   Also, over at least the past three decades the Barstow Police

Department and the San Bernardino County Sheriff's Department have failed to

discipline its deputy sheriffs and police officers for the use of unreasonable force

upon innocents and other civilians, and both entities have an unwritten policy to

use unreasonable force upon persons who pose no threat to its deputies and

---

[28] To protect themselves and other police officers and deputy sheriffs and supervisory personnel
from civil, administrative and criminal liability.

officers.

181.   Over the past ten years the San Bernardino County Sheriff's Department has used unreasonable force on an average of two thousand persons per year and the Barstow Police Department has used excessive force on hundreds of persons.

182.   Over than same period of time, within the past six years, the use of unreasonable force by San Bernardino County Sheriff's Department and the Barstow Police Department has increased  and the severity and level of the use of force has been promoted by the San Bernardino County District Attorney's Office Crimes Against Peace Officers ("CAPO") Prosecution Unit by said unit deliberately persecuting and prosecuting the innocent victims of the use of unreasonable force by San Bernardino County Sheriff's Department deputy sheriffs and Barstow Police Department police officers, and by the San Bernardino County Sheriff's Department and the Barstow Police Department justifying the use of unreasonable force, including the use of unreasonable deadly force upon civilians.

183.   Said policies and practices of the San Bernardino County District Attorney's Office CAPO Prosecution Unit and the San Bernardino County Sheriff's Department's failure to discipline literally thousands of deputy sheriffs and police officers for the obvious use of unreasonable force for "contempt of

cop" cases and otherwise. Said policies also resulted in the unlawful use of force upon Leonard Angelo Sanchez during the incident complained of in this action.

184.   As a direct and proximate result of the actions of defendants RAMIREZ, McMAHON, CITY and COUNTY and DOES 7 through 10, inclusive, plaintiffs were: 1) were substantially physically injured, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred funeral and burial costs and expenses, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00.

185.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, save CITY and COUNTY, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

### THIRTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Under California State Law
### [Direct Liability Action]
**(By Plaintiffs Margaret Alba, individually and as guardian ad litem for plaintiffs A.S., L.S., S.S., individually and as successors in interest to Decedent Leonard Angelo Sanchez, against all Defendants)**

186.   Plaintiffs hereby reallege and incorporate by reference the allegations

set forth in paragraphs 1 through 203, inclusive, above, as if set forth in full herein.

187.   As set forth above, defendants SPILLER, BUESA, RAMIREZ and/or ESPINOZA and/or LEWIS and/or CLEARY and/or ALVARADO and/or MOTLEY and/or WARRICK and/or WALKER and/or LAING and/or BARRIENTOS and/or GILMORE and/or KIRBY and/or BENITEZ and DOES 1 through 6, inclusive: 1) wrongfully and unlawfully shot and killed Leonard Sanchez, 2) pointed their guns at the plaintiffs in / at the motel room, 3) ordered the plaintiffs to exit their motel room, 4) "arrested" and "interrogated" the plaintiffs, 5) unlawfully seized the plaintiffs' motel room, 6) unlawfully searched the plaintiffs' motel room, 7) falsely arrested / falsely imprisoned the plaintiffs and took them, against their wills, to the Barstow Police Department to be interrogated by the San Bernardino County Sheriff's Department and the Barstow Police Department when their relatives were already dead, without telling them that they were dead, to protect their officers and deputies from civil and criminal liability, and committed the other wrongful actions complained of herein.

188.  When said defendants committed these actions they knew or reasonably should have known that said actions would cause the plaintiffs to suffer extreme emotional distress, and, in fact, plaintiffs did suffer severe emotional distress.

189.   The actions complained of herein by plaintiffs were outrageous and were not the type of actions tolerated in a civilized society.

190.   As a direct and proximate result of the actions of said defendants' negligent actions, plaintiffs: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses; 3) incurred funeral / burial expenses; and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $10,000,000.00.

191.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, save CITY and COUNTY, in an amount to be proven at trial, in excess of $3,000,000.00 for each plaintiff.

**WHEREFORE**, plaintiffs pray for judgment as follows:

a)   For a judgment against all defendants for compensatory damages in an amount in excess of $10,000,000.00 for each plaintiff;

b)   For a judgment against all defendants, save CITY and COUNTY, for punitive damages in an amount in excess of $10,000,000.00 for each plaintiff;

c)   For an award of reasonable attorney's fees and costs;

d)      For a trial by jury; and

e)      For such other and further relief as this honorable court deems just and equitable.

Dated July 24, 2019                          ___/s/_ *Jerry L. Steering*_____

JERRY L. STEERING, Attorney for
Plaintiffs Margaret Alba, individually and
as guardian ad litem for minor children A.S.,
L.S., and S.S., successors in interest to
decedent Leonard Angelo Sanchez

SECOND AMENDED COMPLAINT FOR DAMAGES
68